# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

UNITED STATES OF AMERICA

v.                              No. 4:06CR00411 JLH

ANDRE L. CRAWFORD

## OPINION AND ORDER

Andre Crawford has filed a motion to suppress evidence found during a traffic stop and subsequent frisk of his person. On March 22, 2007, the Court held an evidentiary hearing on the motion to suppress. For the following reasons, this motion is denied.

## I.

The traffic stop leading to Crawford's arrest occurred on the night of November 14, 2004. Officer Robert Rogers of the West Helena Police Department testified that he was on patrol in West Helena, Arkansas, in the area of Fourth Street and Plaza Street, which he considers to be a high-crime area.[1] He observed two men in a gray Expedition and a third man standing beside a green Pontiac in the parking lot of the Plaza Mini Mart.[2] Rogers saw "something change hands," and the men in the Expedition drove away. Rogers testified that he was not able to tell exactly what changed

---

[1] When questioned as to why he considered the area around the mini-mart to be a high-crime area, Rogers testified that numerous arrests had been made for drugs there, that he had been involved in executing search warrants in the area, and that "right across the street is a known crackhouse, right by the bank."

[2] The time at which the traffic stop occurred cannot be ascertained from the record. Rogers testified that he did not remember the exact time, but he thought it was about eleven o'clock at night. On cross-examination, however, defense counsel asked if the events may have taken place at around 5:45 p.m., presenting Rogers with a police report showing that Tierre Steele, who was a passenger in Crawford's vehicle and was arrested at the same time as Crawford, gave a statement regarding the incident that concluded at 6:50 p.m. Rogers repeated that he did not know the time at which the stop occurred, but he knew that it was at night.

hands between the men in the parking lot, but it "[l]ooked to be money changing hands." On cross-examination, Rogers admitted that it could have been cigarettes or a cigarette lighter. Believing that he had just witnessed a drug deal, however, Rogers stopped the Expedition "to see what was going on."

Rogers testified that when stopped the Expedition the passenger door opened, so he "went to the passenger door and got the passenger out," at which point the passenger said, "I got a big ass gun on me, man." Rogers further testified that he could see the driver, Crawford, "trying to hide something." Rogers "yelled at him to keep his hands where [Rogers] could see them," but Crawford "kept reaching down as if he was tying to hide something." The passenger, later identified as Tierre Steel, was handcuffed and placed on the ground.

Another police officer arrived on the scene, and the officers got Crawford out of the car and frisked him. Rogers testified that he "found a clear plastic bag sticking out of [Crawford's] left shoe," which "contained what appeared to be crack cocaine inside." The officers then handcuffed Crawford and searched the vehicle, finding a set of scales and baggies in the center console and a digital scale, baggies, bags with marijuana particles, and few seeds on the floorboard. The scales had cocaine residue.

Rogers testified that he recognized Crawford when he saw the exchange take place. Rogers knew that Crawford had a criminal history and was out on appeal on a 40-year sentence.[3] Rogers's report on the incident does not say that he recognized Crawford before stopping him. However,

---

[3] Crawford was convicted of multiple firearms and drug offenses in the Circuit Court of Phillips County, Arkansas, and sentenced to 40 years' imprisonment. His conviction has been affirmed on appeal. *Crawford v. State*, No. CACR 04-768, 2005 WL 2375049 (Ark. App. Sept. 28, 2005) (unpublished opinion).

2

Rogers testified that he recognized Crawford when the exchange occurred in the mini mart parking lot. The report describes the circumstances of the exchange in the parking lot, identifying the participants as "black males," and the subsequent traffic stop, identifying the men in the Expedition as "the driver" and "the passenger." The report then states, "Both the driver and passenger were handcuffed for officer sasfty [sic] and placed on the ground. The driver was identified as Andre Crawford and the passanger [sic] as Tierre Steel." When questioned about his failure to record his prior identification of Crawford in the police report, Rogers testified that it was just a mistake on his part in not writing it out.

## II.

Crawford argues that the drugs and paraphernalia found on his person and in his vehicle should be suppressed because Rogers lacked reasonable suspicion to stop his vehicle under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The United States Constitution guarantees the right to be free against unreasonable searches and seizures. U.S. CONST. amend. IV. "The Fourth Amendment permits police to make an investigative stop of a vehicle if they have a 'reasonable suspicion that the vehicle or its occupants are involved in criminal activity.'" *United States v. Spotts*, 275 F.3d 714, 718 (8th Cir. 2002) (quoting *United States v. Bell*, 183 F.3d 746, 749 (8th Cir. 1999)). "Reasonable suspicion requires a particularized and objective basis for suspecting legal wrongdoing." *United States v. Jacobsen*, 391 F.3d 904, 906 (8th Cir. 2004). Whether the particular facts known to the police amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances. *United States v. Maltais*, 403 F.3d 550, 554 (8th Cir. 2005). All of the surrounding facts and circumstances known to the police officers should be considered, including the time of day or night, *see United*

*States v. Knox*, 950 F.2d 516, 519 (8th Cir. 1991) (stop justified by several factors, including the time of night), the location, *see id.* (high-crime neighborhood), and whether the defendant is known to the police as a person with a criminal history, *see United States v. Cornelius*, 391 F.3d 965, 967 (8th Cir. 2004) (officer's knowledge of defendant's "gang and narcotics affiliations" supported reasonable suspicion).

Suspicious activity justifying an investigative stop of a vehicle "need not conclusively prove guilt[;]" rather, "[c]onduct consistent with both guilt and innocence may suffice." *United States v. Watts*, 7 F.3d 122, 125 (8th Cir. 1993). Reasonable suspicion for making an investigative stop may therefore "be justified even if there are innocent explanations for a defendant's behavior when the circumstances are considered in the totality." *United States v. Tuley*, 161 F.3d 513, 515 (8th Cir. 1998). In determining whether a stop is supported by reasonable suspicion of criminal activity, conduct which might appear wholly innocent to an untrained observer may acquire significance when viewed by an officer who is familiar with drug trafficking practices. *United States v. Garcia*, 23 F.3d 1331, 1335 (8th Cir. 1994).

The United States relies on the following facts and circumstances, which it asserts, considered together, support reasonable suspicion: (1) the events occurred in a high-crime area; (2) Rogers recognized Crawford and knew of his criminal history; (3) Rogers observed an exchange between Crawford and another man after dark in a parking lot; and (4) Rogers had previous training and experience concerning illegal drug activity.[4] Crawford counters that, while Rogers saw "something change hands," he did not know what it was. Thus, Crawford argues, Rogers lacked a

---

[4] Rogers testified that he has worked in law enforcement since March 2001 and that he has had several hours of advanced narcotics training at the Camden Law Enforcement Training Academy.

4

particularized suspicion.

In support of his position, Crawford cites two cases which found that reasonable suspicion existed for an investigative stop, based in part on an officer's observation of the exchange of a particular item associated with drug trafficking. In the first case, *United States v. Bustos-Torres*, 396 F.3d 935 (8th Cir. 2005), an undercover police officer observed a man emerge from a bar in an area known for drug trafficking and exchange a plastic baggie for money with two men in a vehicle in the parking lot. The two men in the vehicle left, the first man returned to the bar, and the defendant arrived. *Id.* at 939. The man from the bar emerged again, entered the defendant's vehicle for a few minutes, and then returned to the bar. *Id.* at 939-40. In the second case cited by Crawford, *United States v. Perea*, 374 F. Supp. 2d 961 (D.N.M. 2005), police observed the defendant placing "a white, billiard-ball size object" in another man's hand in the parking lot of a truck stop. The courts in both *Bustos-Torres* and *Perea* held that the police officers' subsequent stops of the defendants' vehicles were supported by reasonable suspicion. *Bustos-Torres*, 396 F.3d at 941-43; *Perea*, 374 F. Supp. 2d at 973. Crawford points out that those cases involved police observation of identifiable items, while in this case Rogers was unable to identify what changed hands and thus make a connection between a particular object and a suspected drug crime.

This case presents a close question as to whether Rogers's stop of Crawford's vehicle was supported by reasonable suspicion. Cases from the Eighth Circuit could be reasonably be construed as supporting a decision either way. In certain cases involving suspected drug couriers in airports, the Eighth Circuit has held that reasonable suspicion did not exist in circumstances that could be considered more suspicious than the circumstances in this case. For example, in *United States v. Jones*, 254 F.3d 692 (8th Cir. 2001), the court found no reasonable suspicion existed to stop an

5

individual who arrived on a flight originating in Los Angeles, a "source city" for drugs; walked around a phone bank instead of proceeding in a straight line; traveled with no luggage; and looked behind himself three times as he walked through the airport. Similarly, in *United States v. Eustaquio*, 198 F.3d 1068 (8th Cir. 1999), the Eighth Circuit found no reasonable suspicion to stop a woman who arrived on a flight "from a source city for narcotics trafficking" with no checked luggage and a one-way ticket purchased that day with cash; appeared nervous and took a direct path to leave the terminal; said that she was traveling to visit friends and family, but had no friends or family meeting her at the airport; refused to pull her shirt closely around her body when asked to do so by a police officer; and appeared to have a bulge under her shirt.

The Eighth Circuit case bearing the closest resemblance to this case factually, however, is *United States v. Cornelius*, *supra*. In *Cornelius*, two police officers observed the defendant walking down a street in a "very high narcotics area" at about 10:00 a.m. *Cornelius*, 391 F.3d at 966-67. One of the officers recognized the defendant from previous arrests. *Id.* "As the officers approached [the defendant] in their patrol car, they observed him change direction and place his left hand in his pocket." *Id.* at 966. Noting that these three factors – the defendant's criminal history, the high-crime area, and the defendant's conduct of placing his hand in his pocket – are properly considered in determining reasonable suspicion, the court concluded that the totality of the circumstances created a reasonable suspicion that justified the stop of the defendant. *Id.* at 967.

The circumstances in the instant case are more indicative of specific criminal activity than the circumstances in *Cornelius*. Like the defendant in *Cornelius*, Crawford was observed in a high-crime area and was recognized as an individual with a criminal history. While Crawford's conduct in exchanging something with another person could have been an innocent act, such conduct is also

6

consistent with drug transactions. Moreover, the exchange took place at night, not during daylight hours. The Court recognizes that the defendant in *Cornelius* walked in another direction upon seeing the patrol car, and Crawford engaged in no such evasive action. The Eighth Circuit did not discuss this aspect of the defendant's behavior in its analysis, however, focusing instead on the fact that the defendant put his hand in his pocket. *See id.* (citing *United States v. Davis*, 202 F.3d 1060, 1063 (8th Cir. 2000), and noting that the suspect in *Davis* "nervously plac[ed] hand in jacket pocket"). Making an exchange in a parking lot at night is at least as suspicious as placing one's hand in one's pocket while walking down the street in broad daylight.

## CONCLUSION

In summary, Rogers saw Crawford, a known drug dealer, make an exchange in a parking lot at night in an area in which drug transactions are common. Based on his experience and training, Rogers reasonably believed that he had witnessed a drug transaction. Under *United States v. Cornelius*, these facts were sufficient to justify an investigative stop. Rogers's investigative stop of Crawford's vehicle was supported by a reasonable suspicion that Crawford was engaged in illegal drug activity. Crawford's motion to suppress is therefore denied. Document #15.

IT IS SO ORDERED this 10th day of April, 2007.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE